IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

RICHARD JOE PEACHEY, JR., )
 )
      Plaintiff, )
 )
v. ) Case No. 08-CV-774-PJC
 )
MICHAEL J. ASTRUE, Commissioner of the )
Social Security Administration, )
 )
      Defendant. )

**OPINION AND ORDER**

Claimant, Richard Joe Peachey, Jr., ("Peachey"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Peachey's application for disability benefits under the Social Security Act.  In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge.  Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.  Peachey appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Peachey was not disabled.  For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**Claimant's Background**

At the time of the hearing before the ALJ on February 28, 2008, Peachey was 48 years old.  (R. 351).  He completed eleventh grade, and he believed that he had obtained a GED while incarcerated.  *Id.*  At the hearing, it was agreed that there were no alleged physical impairments, and that his claim was limited to mental issues.  (R. 353-54).  Peachey testified that he last

1

worked in lawn care several years before the hearing. (R. 353). While incarcerated, he completed a course in brakes and front-end alignment. (R. 354).

Peachey testified that he had been diagnosed with bipolar disorder and that it kept him from working because he was unable to focus on any work. (R. 354). He also said he had problems with paranoia, feeling that he was being watched when he left his house or when he was in a crowd of people. (R. 355). He sometimes saw shadows, and he sometimes heard mumbled voices. (R. 355-56). Medication helped those symptoms somewhat. (R. 355). He had nightmares about snakes every night, affecting his sleep. (R. 356). He took medication to help him sleep, but his testimony was that he only slept about three and a half hours a night. *Id.*

He spent most of his time by himself in his room watching television, although often he was not actually paying attention to the television when it was on. (R. 356-57). He did not spend time reading. (R. 357). He did the dishes and cooked for his mother and himself, and he did not have trouble completing those tasks. *Id.* He could mow the small lot for his trailer, but he would have to take a break due to a lack of energy. (R. 357-58). Peachey testified that he needed to avoid being out in hot weather. (R. 357). He could run errands. (R. 358). When he shopped at the grocery store, he would buy more items than he needed. *Id.* He was shaking at the hearing, and he testified that he thought it was a side effect of his medication. *Id.*

He testified that he had not used drugs since he left prison, approximately three and a half years before the hearing. (R. 359). He had previously used methamphetamine, cocaine, LSD, marijuana, and alcohol. (R. 361). He attended counseling on a regular basis. *Id.* He did not attend Alcoholics Anonymous or any other support group. (R. 359).

He lived with his mother, and she needed assistance because she used a wheel chair. (R. 362). He helped his mother with her medications. *Id.* He did not drive, but his mother drove.

2

(R. 363).

The most significant thing that kept him from working was being around people. *Id.* At the hearing, he felt that everything was closing in on him. (R. 360). He had regular problems with racing thoughts. *Id.*

Peachey received psychiatric medications and counseling at Associated Centers for Therapy ("ACT") from April 16, 2002 through July 2003. (R. 310-44).

Department of Corrections medical records show that Peachey's need for psychiatric medications was noted at intake on February 13, 2004. (R. 201). The records show that Peachey received regular treatment by a psychologist, as well as pharmaceutical medications. (R. 166 - 201). On July 2, 2004, Peachey stated to a treating psychologist that he was worried that a heat restriction would hold him back from lower security due to his medications. (R. 188). On September 9, 2004, he told the psychologist that he didn't understand why he wasn't going to lower security, and he was worried that it was because of his medications. (R. 186). He stated that he had excellent work evaluations. *Id.* On November 3, 2004, January 26, 2005, and June 21, 2005, Peachey said that he got along well with his peers and on his job. (R. 172, 180, 184). On May 10, 2005, Peachey told the psychologist that he was doing better and that school was going well. (R. 176).

He reported to the psychologist on June 9, 2005 that he was watching a lot of television and staying out of the heat and away from people. (R. 173). He reported this relaxed him. *Id.* At this time, Peachey also reported difficulty focusing on his work at Career Tech. *Id.* On June 30, 2005, DOC medical records show an entry with Peachey's vital signs. (R. 174). The entry then states: "Heat restrictions? Sweat 'pops' out". *Id.* The observation line states that Peachey was in no distress and the assessment line states "Heat Related". *Id.* The first line of

the plan states that Peachey should increase his intake of water and salt. *Id.* The second line states: "L.I. till 7/8/05". *Id.* Also on June 30, 2005, Peachey reported to his psychologist that he was scheduled to complete Career Tech, and he received good feedback from the instructor. (R. 171). He said that the physician "laid him in for week due to heat exhaustion" and the Career Tech administrator wanted to kick him out of the class due to his heat restriction. *Id.* He also stated that the fans in the shop were usually enough to keep him cool. *Id.*

On October 21, 2005, Peachey presented at ACT, and this record noted that he had been released from prison on October 15. (R. 307-08). He met with a social worker who reported his complaints of racing thoughts, wakefulness for 2-3 days at a time, poor sleep, depressed mood, and paranoia. (R. 308). Peachey reported to the social worker that he had been clean since his release from prison and he wanted to stay clean. *Id.* The social worker reported Peachey's Axis I[1] diagnosis as bipolar disorder not otherwise specified and polysubstance dependence in sustained remission. *Id.* She reported his global assessment of functioning ("GAF") as 40.

Stanley Hanan, M.D. at ACT saw Peachey on October 26, 2005 and prescribed medications. (R. 295). He stated Peachey's diagnosis as mood disorder, not otherwise specified, with a note that it was probably bipolar disorder, but that he could not rule out mood disorder secondary to substance abuse. *Id.* He also included diagnoses of possible post-traumatic stress disorder ("PTSD") and polysubstance abuse and dependence by history. *Id.* A treatment plan was completed on November 8, 2005. (R. 297-304). Peachey's Axis I diagnoses were mood disorder not otherwise specified and polysubstance dependence in full remission. (R. 302).

---

[1] The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000).

4

There was no diagnosis on Axis II, and his GAF was assessed as 54. *Id.*

At a follow up appointment on November 30, 2005, Dr. Hanan changed the diagnoses to mood disorder, not otherwise specified and polysubstance dependence, and he noted that the mood disorder was probably bipolar disorder. (R. 294). He continued Peachey's medications. *Id.* On February 28, 2006, Dr. Hanan changed the diagnosis to probable schizoaffective disorder, and he continued Peachey's medications. (R. 284). At follow up appointments on March 28 and April 25, 2006, the diagnosis remained the same. (R. 278, 280). At the April 25 appointment, Peachey complained of continuing depression, anxiety, and restlessness, and Dr. Hanan adjusted Peachey's medications. (R. 278).

A comprehensive treatment plan was completed on June 6, 2006. (R. 263-76). Peachey's diagnoses were stated as schizoaffective disorder and amphetamine abuse in remission. (R. 269). His GAF was assessed as 54. *Id.* At an appointment with Dr. Hanan on June 28, 2006, Peachey reported that his father had passed away suddenly two weeks earlier. (R. 261). Peachey reported that he was "busy at home trying to take care of his mother, who is 65 and is recovering from a stroke. He is doing laundry, cleaning and cooking." *Id.* Dr. Hanan adjusted Peachey's medications in an attempt to address reported sleep disturbance that was not being dealt with by the previous medications. *Id.* On July 26, 2006, Peachey reported to Dr. Hanan that his symptoms were controlled, except that his legs shook continually in an uncontrolled way. (R. 260). Dr. Hanan adjusted Peachey's medications. *Id.* On August 30, 2006, Peachey reported depression, isolation, and trouble sleeping. (R. 258). Dr. Hanan changed the diagnosis to schizoaffective disorder with breakthrough depressive symptoms, and he adjusted Peachey's medications. *Id.*

On November 1, 2006, Dr. Hanan reported that Peachey looked better than he had in

5

several previous visits and was "able to smile and laugh in response to humor." (R. 257). Peachey reported sleep issues. *Id.* On November 19, 2006, Peachey again complained of sleep problems, and he reported paranoia and delusions. (R. 256). Dr. Hanan stated Peachey's diagnosis as schizoaffective disorder with recurrent psychotic symptoms. *Id.* On January 10, 2007, Dr. Hanan addressed Peachey's complaints of distractibility and adjusted his medications. (R. 255). Peachey reported that he was about the same on February 5, 2007, and Dr. Hanan again adjusted his medications, and Peachey saw Dr. Hanan again for follow up on March 5, 2007. (R. 253-54). On April 2, 2007, Peachey reported to Dr. Hanan that he was depressed, suicidal, and could not continue in that condition. (R. 252). Peachey and Dr. Hanan agreed that Peachey should see a new provider.

Peachey saw Dawn LaFromboise, M.D. on May 2, 2007. (R. 250-51). For Peachey's diagnosis, Dr. LaFromboise stated the following:

> Polysubstance Dependence in sustained full remission.
> Unsure if it is Paranoid Schizophrenia or Substance-Induced Psychosis or a Bipolar Disorder with psychotic features.
> Rule out Schizoaffective Disorder.

(R. 250). For Axis II, Dr. LaFromboise stated that Peachey had several Cluster A and Cluster B traits, and she made several changes to Peachey's medications. (R. 250-51). At a follow up appointment on May 17, 2007, Peachey stated that his only major problem was that he continued to have disrupted sleep. (R. 249). Dr. LaFromboise stated Peachey's diagnoses similarly to the May 2 diagnoses, and she continued adjustments to his medications. *Id.* On May 31, 2007, Dr. LaFromboise stated that Peachey heard voices and continued to have complaints of disrupted sleep, and she continued to adjust his medications. (R. 248). On June 14, 2007, Dr. LaFromboise continued the adjustments to Peachey's medications and in her diagnoses stated

that she thought bipolar disorder with psychotic features was more likely than paranoid schizophrenia or substance-induced psychosis. (R. 247). Adjustments to medications continued on July 2 and July 23, 2007, and Peachey continued to complain of sleep disruption and anxiety. (R. 245-46).

Peachey was examined by Horace C. Lukens, Jr., Ph.D., an agency consultant, on February 23, 2006. (R. 225-28). Dr. Lukens described Peachey's complaints of anxiety, depression, and problems with concentration, along with wakefulness. (R. 225). Dr. Lukens found that Peachey displayed no significant memory abnormalities, his mood was depressed and anergic, his affect was flat and without spontaneity, and his judgment and insight were limited but adequate. (R. 227). Dr. Lukens' diagnoses on Axis I were major depressive disorder, recurrent, moderate, alcohol abuse by history, and polysubstance abuse by history. *Id.* On Axis II, his diagnosis was personality disorder not otherwise specified, with antisocial features. *Id.* He assessed Peachey's GAF as 40. *Id.*

A non-examining consultant, Sally Varghese, completed a Psychiatric Review Technique Form and a Mental Residual Functional Capacity Assessment on March 17, 2006. (R. 229-44). For Listing 12.04, Dr. Varghese assessed Peachey as having depressive syndrome, and for Listing 12.06, she found an anxiety-related disorder as evidenced by recurrent and intrusive recollections of a traumatic experience. (R. 232, 234). For Listing 12.08, she found a personality disorder, and for Listing 12.09 she found behavioral changes or physical change associated with the regular use of substances that affect the central nervous system. (R. 236-37). For the "Paragraph B Criteria,"[2] Dr. Varghese found that Peachey had moderate restriction of activities of daily

---

[2] There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1)

living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation. (R. 239). In the "Consultant's Notes" portion of the form, Dr. Varghese summarized the treating records with ACT, and she summarized the report of Dr. Lukens, including his assigned GAF of 40. (R. 241). She noted that Peachey's activities of daily living appeared to be limited by lack of motivation and situational depression. *Id.*

In her mental RFC assessment, Dr. Varghese found that Peachey was markedly limited in his ability to understand, remember, and carry out detailed instructions and moderately limited in his ability to maintain attention and concentration for extended periods. (R. 242). She additionally found Peachey markedly limited in his ability to interact appropriately with the general public. (R. 243). She found no other significant limitations. (R. 242-44). In the section for notes to elaborate on the assessment, Dr. Varghese stated that Peachey could remember, understand and carry out simple instructions under routine supervision and could relate superficially with coworkers and supervisors for work purposes. (R. 244). She stated that Peachey could not tolerate active involvement with the general public, but she found that he could adapt to a work environment. *Id.*

## Procedural History

In December 2005, Peachey filed an application for supplemental security income under Title II, 42 U.S.C. § 401 *et seq.* (R. 63-65). Peachey's application for benefits was denied in its

---

restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") §12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

entirety initially and on reconsideration. (R. 37-40, 42-43). A hearing before ALJ Richard J. Kallsnick was held February 28, 2008, in Tulsa, Oklahoma. (R. 347-69). By decision dated February 29, 2008, the ALJ found that Peachey was not disabled at any time through the date of the decision. (R. 16-22). On November 19, 2008, the Appeals Council denied review of the ALJ's findings. (R. 5-7). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[3] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

At Step One, the ALJ found that Peachey had not engaged in any substantial gainful activity since the application date of December 6, 2005. (R. 18). At Step Two, the ALJ found that Peachey had severe impairments of bipolar disorder with psychotic features, schizoaffective disorder, personality disorder not otherwise specified with antisocial features, and history of polysubstance and alcohol abuse. *Id.* At Step Three, the ALJ found that Peachey's impairments did not meet any Listing. *Id.*

---

*See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

The ALJ determined that Peachey had the RFC to perform medium work with the additional limitations that Peachey could understand and remember simple instructions and that he was incapable of regular interactivity with people in a work environment. (R. 19). At Step Four, the ALJ found that Peachey could return to his past work as a yard worker. (R. 21). In the interest of judicial efficiency, the ALJ made an alternative finding at Step Five that there were jobs available in the economy that Peachey could perform. (R. 21-22). The ALJ therefore found that Peachey was not disabled at any time after the date of his December 6, 2005 application. (R. 22).

## Review

Peachey asserts that the ALJ erred in his decision by failing to adequately discuss the medical evidence in the record. Peachey's first argument is essentially that the ALJ only discussed evidence tending to support his view that Peachey was not disabled while failing to discuss evidence that tended to favor Peachey's claim of disability. It is oft-stated law in this circuit that an ALJ must discuss more than just the evidence favorable to an opinion of not disabled:

> [I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). It is error to ignore evidence that would support a finding of disability while highlighting the evidence that favors a finding of nondisability. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

The evidence which Peachey complains was ignored was the GAF scores, stating that his scores of 40 and 54 should have been discussed by the ALJ. Plaintiff's Opening Brief, Dkt. #15, p. 8. The undersigned agrees that it would have been preferable for the ALJ to have explicitly

discussed the GAF scores. *See Givens v. Astrue*, 251 Fed. Appx. 561, 567 (10th Cir. 2007) (unpublished) (*citing Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). Here, in contrast to *Givens* and the cases cited by Peachey, the ALJ did not reject the evidence of the GAF scores, but instead accommodated the functional limitations that were found to be consistent with those GAF scores.

For example, in *Givens*, the ALJ's RFC determination included no mental limitations at all, even though the ALJ had found the claimant's depression to be a severe impairment at Step Two, and the claimant's treating physician had assessed his GAF as 50. *Givens*, 251 Fed. Appx. at 566-67. The ALJ here implicitly adopted the opinion evidence of Dr. Varghese[4], the only medical source who stated her opinion in terms of functional limitations. The ALJ's RFC formulation appears to closely track the narrative statement that Dr. Varghese made regarding Peachey's RFC. (R. 19, 244). Thus, the ALJ did not engage in impermissible "picking and choosing" of the expert reports by only accommodating some of the functional limitations reflected by those reports, while ignoring others. *Haga*, 482 F.3d at 1208.

Additionally, the undersigned notes that Dr. Varghese summarized the treating evidence along with the report of Dr. Lukens, including Dr. Lukens' assessment of Peachey's GAF as 40. (R. 241). The functional limitations that Dr. Varghese found appear to be consistent with the treating evidence and Dr. Lukens' report. The ALJ in the present case therefore was not

---

[4] As was true of the GAF scores, it would have been preferable for the ALJ to explicitly discuss and adopt the opinion evidence of Dr. Varghese. It seems clear that explicit discussion and adoption of the opinion evidence does not always happen. One example is *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), in which the Tenth Circuit continually describes the ALJ's "apparent" adoption and rejection of the opinions of the medical expert. The contrast with the present case is that here the ALJ implicitly adopted all of Dr. Varghese's findings of functional limitations, whereas the ALJ in *Haga* had only adopted some, without explaining his implicit rejection of others.

confronted with a situation where there was conflicting evidence that he needed to analyze and weigh, giving his reasons for the weight that he gave to that evidence. *See Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (when the ALJ does not need to reject or weigh evidence unfavorably in order to determine the claimant's RFC, the need for express analysis is weakened); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (while the lack of analysis accompanying RFC determination was "troubling," the determination was affirmed because it was supported by substantial evidence). Dr. Varghese's opinions are substantial evidence that supports the RFC determination, and those opinions are consistent with the other evidence that the ALJ had before him. Because the ALJ's RFC determination was supported by substantial evidence, and it was consistent with the evidence of the GAF assessments, Peachey's arguments regarding the GAF scores are not persuasive and the ALJ's decision is affirmed.

Peachey's other argument is that the ALJ did not discuss environmental limitations. Peachey briefly testified to his asserted problems with heat by answering "yes" when his attorney asked him if he had previously had problems with heat exhaustion and if he needed to avoid being out in heat. (R. 357). There is evidence that a DOC physician restricted Peachey's activities for one week in July 2005 due to heat-related problems. (R. 174). There are a few other references in the DOC medical records where Peachey told his providers that he had a heat restriction. (R. 171, 173, 188). These limited references do not establish that Peachey had a heat-related impairment, a threshold issue on which he had the burden of proof. *Williams*, 844 at 750-51. Without more medical evidence, the ALJ was not obligated to discuss this asserted impairment. *See Big Pond v. Astrue*, 280 Fed. Appx. 716, 719 (10th Cir. 2008) (unpublished) (ALJ did not commit error in failing to discuss cardiac condition when the evidence was not significantly probative regarding disability).

Further, the undersigned agrees with the Commissioner that Peachey has waived any argument regarding an asserted heat-related impairment. Toward the beginning of the hearing before the ALJ, preliminary questioning had taken place when the ALJ asked Peachey's counsel if there were any physical problems, and the attorney responded that there were no physical limitations. (R. 352-53). The ALJ then confirmed that by asking if the issue was mental limitations, and the attorney responded in the affirmative. (R. 353). When a claimant is represented by counsel, the ALJ can ordinarily rely on the counsel to structure and present the claimant's case. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). In the present case, given that Peachey's counsel had expressly and unequivocally stated that Peachey was not making claims of physical impairments, it is understandable that the ALJ would not have discussed an asserted physical limitation that was only touched on briefly during the hearing. *See Zumwalt v. Astrue*, 220 Fed. Appx. 770, 776-77 (10th Cir. 2007) (unpublished) (waiver principles apply in Social Security disability). The evidence of heat-related restrictions was not significantly probative of disability. Furthermore, Peachey waived this issue. Consequently, the ALJ did not commit error in failing to discuss the asserted heat restriction, and the ALJ's decision is affirmed.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 10th day of March, 2010.

Paul J. Cleary
United States Magistrate Judge